

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

| | |
|---|---|
| JUSTIN MCKEE, BRANDON MCKEE, CASEY M. GRASTY, and CHRISTINE M. SMITH, *all Individually and as Successors-in-Interest to OLIN B. MCKEE, Deceased*,<br>     Plaintiffs,<br><br>vs.<br><br>LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br>     Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 0:21-0499-MGL<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S RENEWED MOTION TO DISMISS**

## I.     INTRODUCTION

Plaintiffs Justin McKee, Brandon McKee, Casey M. Grasty, and Christine M. Smith (collectively, Plaintiffs) bring this action against Lincoln National Life Insurance Company (Lincoln).  In their second amended complaint (SAC), they allege causes of action for declaratory judgment, breach of contract, aiding and abetting his son, Gary McKee's (Gary), breach of fiduciary duty, tortious interference with contract or expectancy, and negligence and gross negligence under South Carolina law.  This Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

Pending before the Court is Lincoln's renewed motion to dismiss Plaintiffs' SAC under Fed. R. Civ. P. 12(b)(6).  Having carefully considered the original motion, the renewed motion, the original response, the original reply, the record, and the applicable law, it is the judgment of the Court the renewed motion will be denied.

## II.     FACTUAL AND PROCEDURAL HISTORY

As alleged in the SAC, in 2001, Olin B. McKee (Olin) purchased a Universal Life Insurance policy (the Policy) from Lincoln. In 2013, Olin executed a "Beneficiary Change for Life Policy" form that changed the primary beneficiaries under the Policy from his spouse to Plaintiffs in equal shares.

In 2014, Olin executed a Durable Power of Attorney (POA), which designated Gary as his agent. Plaintiffs attach the POA to the SAC, so the Court considers it in this Order.

In December 2016, Gary requested Lincoln make him the sole beneficiary of the Policy. Lincoln denied the request as unauthorized under the POA. A few weeks later, in January 2017, Gary submitted a "Surrender Request" to Lincoln, requesting that Lincoln terminate the Policy and send a check for the cash value of the Policy on an expedited basis. Lincoln did so and sent a check to Gary for $102,856.72. Gary used the proceeds of the policy for his own benefit, to buy a vacation home.

Olin died in 2019. Plaintiffs sought benefits under the Policy. Lincoln refuses to pay Plaintiffs under the Policy.

Plaintiffs initiated this action against Lincoln in the York County Court of Common Pleas. They filed an amended complaint, which corrected scrivener's errors. Lincoln removed the matter to this Court and filed the original motion to dismiss the amended complaint. Plaintiffs responded and Lincoln replied.

In Plaintiffs' response, they stated they planned to further amend their complaint to correct errors of fact. After prompting by the Court, they moved to amend their complaint. The Court granted the motion to amend and dismissed without prejudice Lincoln's original motion to dismiss. Plaintiffs filed the SAC and Lincoln filed the instant renewed motion to dismiss, which relies on

the same arguments as the original motion to dismiss. As a result, Plaintiffs neglected to file a further response. The Court thus considers the response and reply to the original motion in this Order, to the extent the SAC failed to resolve the issues.

The Court, having been fully briefed on the relevant issues, will now adjudicate the renewed motion.

### III.     STANDARD OF REVIEW

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must have "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss for failure to state a claim, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). But, the Court need not "accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 243.

## IV.     DISCUSSION AND ANALYSIS

### A.     *Whether Plaintiffs plausibly allege Lincoln improperly surrendered the benefits of the Policy*

Lincoln insists the Court should dismiss each cause of action because it was contractually obligated to surrender the funds to Gary under the POA.  Because it properly surrendered the Policy before Olin's death, it contends, there was no policy with which to pay Plaintiffs benefits.  Thus, it maintains, Plaintiffs' declaratory judgment claim fails because Plaintiffs were properly denied nonexistent benefits; their breach of contract cause of action fails to allege breach or damages; their aiding and abetting claim fails to allege breach, damages, or knowing participation; their tortious interference claim fails to allege breach and Lincoln's actions were justified; and their negligence claim fails to allege breach of duty or damages.

On the other hand, Plaintiffs posits that Lincoln improperly surrendered the funds from the Policy to Gary, thus giving rise to the claims in this action and entitling them to benefits.

Put another way, Plaintiffs allege Lincoln knew or should have known that Gary planned to use the funds for himself, rather than for Olin.  Gary had, just a few weeks before, attempted to designate himself the sole beneficiary under the Policy.  Despite that suspicious activity, Lincoln sent him a check for the value of the Policy.  Lincoln, however, insists this is of no import, because the POA allows them to surrender the funds to the agent, Gary, on behalf of the policyholder, Olin.  Although the POA specifically prohibited Gary's designation as a beneficiary, it failed to specifically prohibit the surrendering of funds to Gary as the agent.

Viewing the SAC in the light most favorable to Plaintiffs, they allege Lincoln sent Gary the funds in his individual capacity, rather than as Olin's agent or sending the funds to Olin directly.  Lincoln avouches the facts will fail to bear this out, but that is the proper subject of a motion for summary judgment, rather than a motion to dismiss.

4

The POA states the agent "shall have no power to . . . cause assets to pass to my Agent." POA at 5. If, as Plaintiffs plausibly allege, Lincoln improperly transferred benefits to Gary in his individual capacity, then Plaintiffs may succeed under their causes of action. *See Loftis v. Eck*, 341 S.E.2d 641, 642 (S.C. Ct. App. 1886) (holding an agent with power of attorney "may not make a substantially gratuitous conveyance of the property of the principal to himself unless the power to do so is expressly granted by the instrument itself.").

Therefore, Plaintiffs' declaratory judgment claim states a claim that Plaintiffs were owed benefits; their breach of contract cause of action alleges breach and damages; their aiding and abetting claim alleges breach, damages, and knowing participation; their tortious interference claim alleges breach and that Lincoln's actions were unjustified; and their negligence claim alleges breach of duty and damages. The Court therefore declines to dismiss the action—or any cause of action—on this ground.

The Court need not address Plaintiffs' arguments that Lincoln improperly raises an affirmative defense. *See Karsten v. Kaiser Found. Health Plan of Mid–Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

### B.     *Whether tortious interference with expectancy is a viable cause of action in South Carolina*

Lincoln also posits that, to the extent Plaintiffs make such a claim, there is no viable cause of action for tortious interference with expectancy—in other words, for Lincoln's alleged interference with Plaintiffs' expected life insurance benefits—in South Carolina. Plaintiffs insist there is. They contend this cause of action allows "frustrated third-party beneficiaries of estate instruments" to "enforce the contract if the contracting parties intended to create a direct, rather

5

than incidental or consequential, benefit to such third person." *Fabian v. Lindsay*, 765 S.E.2d 132, 139 (S.C. 2014) (internal citation omitted).

Plaintiffs cite two cases in support of their position, one of which is a district court case merely predicting what a South Carolina court would do.  Lincoln, however, points out that these cases rest on very different factual scenarios than the instant case.

First, in *Fabian*, the South Carolina Supreme Court recognized a cause of action for breach of contract for a third-party beneficiary in the context of legal malpractice.  765 S.E.2d at 140.  In that case, the court allowed the beneficiaries of a will to bring a cause of action against the decedent's estate planning attorney.  *Id.* at 141.

The court reasoned that "[t]he focus of a will or estate planning document is, inherently, on third-party beneficiaries.  That being the case, the action typically does not arise until the client is deceased."  *Id.*  To hold otherwise, it explained, would "serve to improperly immunize this particular subset of attorneys from liability for their professional negligence."  *Id.* at 140.  The Court noted that "a plaintiff may choose to proceed in contract, tort, or both."  Like a will, the focus of a life insurance policy is also on third-party beneficiaries.  And, the inherent nature of such policies means an action will not arise until the holder of the policy dies.

Second, in *Wellin v. Wellin*, 135 F.Supp.3d 502 (D.S.C. 2015), another judge in this district predicted that South Carolina would recognize a cause of action of intentional interference with inheritance.  The court cited to South Carolina Supreme Court dicta, which favorably discussed the tort.  *See Douglass ex rel. Louthian v. Boyce*, 542 S.E.2d 715, 717 n.4 (S.C. 2001) (noting the court had "adopted the closely analogous tort of intentional interference with prospective contractual relations" and citing to other jurisdictions that recognize intentional interference with

6

inheritance, but declining to reach the issue because the plaintiff in that case was owed no duty by the defendant).

*Douglass* laid out the following elements for the tort: "(1) the existence of an expectancy (2) an intentional interference with that expectancy through tortious conduct (3) a reasonable certainty that the expectancy would have been realized but for the interference and (4) damages." *Id.*

The *Wellin* court also considered that "a majority of courts that have considered the tort have approved it[,]" *Wellin*, 135 F. Supp. 3d at 514 (quoting Nita Ledford, Note—Intentional Interference with Inheritance, 30 Real Prop. Prob. & Tr. J. 325, 352 (1995)), and that the cause of action is recognized by the Restatement (Second) of Torts, to which the South Carolina Supreme Court often cites favorably, *id.* at 514–15.

*Wellin* involved an alleged interference with an expected inheritance, whereas this case involves an alleged interference with expected life insurance benefits. But, there appears to be no meaningful analytical difference between the two. Like in *Fabian* and *Wellin*, "recognizing the tort will prevent future harm by holding interferers accountable for their actions." *Wellin*, 135 F. Supp. 3d at 516.

The Court determines that the available state law in this case is sufficient to hold that the South Carolina Supreme Court would likely adopt the tort of intentional interference with inheritance and require plaintiffs to prove the elements set forth in *Douglass*. *See Private Mortg. Inv. Servs, Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) (explaining when the state supreme court in a diversity case has "spoken neither directly nor indirectly on the particular issue" a court must predict how the supreme court would rule by considering lower court

decisions and other persuasive data including "restatements of the law, treatises, and well considered *dicta*."). The Court thus declines to dismiss the cause of action on this ground.

### C.   Whether Plaintiffs claim for negligence and gross negligence is barred by the economic loss rule

Lincoln contends Plaintiffs' negligence and gross negligence claim fails under the economic loss rule. Plaintiffs counter that claims arising "where a third-party beneficiary's inheritance is frustrated through the negligent acts or omissions of a defendant" can sound in tort or contract. Response at 9.

The economic loss rule "define[s] the line between recovery in tort and recovery in contract." *Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 49 (S.C. 2009). The rule generally prohibits recovery of purely economic damages through a tort cause of action because "[a] breach of a duty which arises under the provisions of a contract between the parties must be redressed under the contract, and a tort action will not lie." *Tommy L. Giffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995).

Courts, however, recognize exceptions to this rule. *See id.* (recognizing recovery for pure economic damages in legal malpractice and architect liability cases). These exceptions "maintain[] the dividing line between tort and contract while recognizing the realities of modern tort law." *Id.* The controlling inquiry "is not whether the damages are physical or economic" but "the source of the duty plaintiff claims the defendant owed." *Id.*

"In most instances, a negligence action will not lie when the parties are in privity of contract. When, however, there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action." *Id.* (explaining that professionals often owe a duty to their clients "which arises separate and distinct from the contract for services.").

The South Carolina Supreme Court recognized "causes of action in both tort and contract" for third-party beneficiaries of a will or estate planning document against a lawyer whose actions defeats their interests. *Fabian*, 765 S.E.2d at 141. As explained above, the analysis in *Fabian* extends to the claims in this case.

Plaintiffs' negligence claims arise out of the same relationship with Lincoln as their tortious interference with expectancy claim—third party beneficiaries. Plaintiffs have thus sufficiently pled a special relationship arising outside the life insurance contract to overcome the economic loss rule at this stage, and the Court declines to dismiss on this ground as well.

## V.     CONCLUSION

For the reasons stated above, it is the judgment of the Court Lincoln's renewed motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Signed this 25th day of July 2022, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
